IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GLORIA LEACH                    *
                                *
v.                              *    Civil Action No. WMN-13-2757
                                *
AETNA LIFE INSURANCE COMPANY    *
et al.                          *
                                *
 *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendant Aetna Life Insurance Company (Aetna). ECF No. 7. The motion is ripe. Upon review of the filings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be granted in part and denied in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Gloria Leach was the wife of Mr. Kenneth Leach, a now-deceased, former employee of Defendant Owens Corning Corporation (Owens Corning). This case relates to a group life insurance policy, contract number 600195, purchased by Mr. Leach while an employee of Owens Corning and administered by Defendant Aetna. The relevant facts as alleged in the Complaint are as follows.

The policy provides $20,000 in basic life insurance coverage and Mr. Leach named Plaintiff as the beneficiary under

the policy. Although the policy generally provided coverage only for employees while employed by Owens Corning, it also provided that coverage would continue for an eligible employee if, upon retirement, the employee had reached an age of 55 and had completed 10 years of employment with Owens Corning. Mr. Leach retired in February 2003 at the age of 61 after having worked for Owens Corning for over 20 years. Plaintiff also alleges that, under the terms of the policy, Owens Corning was required to advise Aetna of any change in Mr. Leach's employment status, and Mr. Leach was entitled to advanced, written notice if his retirement would result in termination of the policy. Plaintiff states that Mr. Leach did not receive any such notice when he retired.

Six years after retirement, Mr. Leach contacted Aetna to confirm his coverage under the policy. Aetna responded with a letter, dated September 10, 2009, verifying that its records showed that Mr. Leach had $20,000 in Basic Life under Group Contract Number 600195. ECF No. 2-1. After receiving that verification, Mr. Leach cancelled another life insurance policy that had been purchased on his behalf.

Mr. Leach died on November 9, 2012. On or about November 12, 2012, Plaintiff submitted a claim to Aetna, seeking to recover the life insurance benefits she believed were owed to her. Aetna responded with a letter dated February 21, 2013,

denying Plaintiff any benefits under the policy. ECF No. 7-3. Aetna stated that Mr. Leach's coverage terminated in February 2003 when he retired. Aetna also stated that, while Owens Corning should have informed Aetna when Mr. Leach's employment ceased, it failed to do so and, therefore, Mr. Leach was erroneously kept in Aetna's system as an active employee until the date of his death. This would appear to be the reason that Aetna indicated in its 2009 letter that the policy remained in force.

Aetna's February 21, 2013, letter denying coverage also stated that, if Plaintiff had any additional information which she believed would assist Aetna in evaluating her claim, she was to forward that information to Aetna for its consideration within 60 days of her receipt of that letter. Aetna specifically requested documentation that would establish that Mr. Leach continued in active employment until the date of his death, <u>id.</u> at 2, documentation that Plaintiff obviously could not provide. The letter further stated,

> If you disagree with this determination of benefits, you have a right to a review of the decision and to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) if the denial is upheld on an appeal. . . .
>
> To obtain a review, please submit a written request to Aetna's Life Claim Service Center. . . . You may also receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to your claim for benefits.

3

> The request for review must be mailed or delivered
> within 60 days following receipt of this explanation.
> Ordinarily, you will receive notification of the final
> determination within 60 days following receipt of your
> request. If special circumstances require an
> extension of time, you will be notified of such
> extension during the 60 days following receipt of the
> request.

Id. at 2-3.

Plaintiff apparently did not submit a written request for review and what actions she did take are not entirely clear from the Complaint. She states that she "advised Aetna that its denial was directly contradicted by the 2009 coverage verification letter" and she "contacted the Owens Corning benefits manager directly in an attempt to resolve the issue . . . ." Compl. ¶ 24. She states further that she "spent an inordinate amount of time and effort dealing with both Aetna and Owens Corning's intentional misrepresentations and bad faith determination in denying benefits under the Policy." Id. at 25.

When these efforts were unsuccessful in obtaining benefits, Plaintiff retained counsel. On June 27, 2013, her counsel sent a demand letter to Aetna and Owens Corning indicating her intent to promptly file suit if settlement was not reached. The demand letter requested a response by July 3, 2013. Aetna did not respond to the demand letter and Plaintiff subsequently filed suit in the Circuit Court for Baltimore County on August 6, 2013. The Complaint included three state law claims: a breach

4

of contract claim against Aetna and Owens Corning (Count I); a claim for the intentional breach of the implied covenant of good faith and fair dealing against Aetna (Count II); and a claim for the intentional breach of the implied covenant of good faith and fair dealing against Owens Corning (Count III).

Aetna removed the action to this Court on the ground that Plaintiff's claims arise, if at all, under ERISA, 29 U.S.C. § 1001 et seq. and, therefore, fall within the original jurisdiction of this Court. Aetna then filed the pending motion to dismiss.[1] ECF No. 7-1. In this motion, Aetna argues that Plaintiff's claims against it are preempted under ERISA, and must be converted into federal claims under that statute. Specifically, Aetna asserts that Plaintiff's claims are simply a claim for denial of benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Once converted, Aetna contends that Plaintiff's claims must be dismissed because Plaintiff failed to exhaust her administrative remedies prior to filing suit. In addition, to the extent Plaintiff intends that her breach of the duty of good faith and fair dealing could be considered an ERISA claim for breach of fiduciary duty under § 502(a)(3), 29 U.S.C.

---

[1] Owens Corning has not responded to the Complaint and this motion relates only to the claims against Aetna. Owens Corning had yet to be served at the time that this action was removed to this Court and Plaintiff has yet to file a proof of service as to Defendant Owens Corning.

§ 1132(a)(3), Aetna maintains that it must be dismissed because courts do not allow overlapping claims under § 502(a)(1)(B) and § 502(a)(3).[2]  Finally, Aetna argues that, should any of Plaintiff's claims survive, Plaintiff's request for a jury trial and the award of punitive damages should be stricken because neither a jury trial nor punitive damages are available under ERISA.

**II. LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Such determination is a "context-specific task," Iqbal, 556 U.S. at 679, in which the factual allegations of the complaint must be examined to assess whether they are sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  "[A] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal

---

[2] Aetna also argued in its motion that any claim under § 502(a)(3) must be dismissed because this section can only be used to obtain equitable relief and not monetary damages.  ECF No. 7-1 at 15 (citing Scott v. Am. Nat'l Red Cross, Civ. No. 05-1284, 2005 WL 2510456, at *6 (D. Md. Oct. 11, 2005)).  In its reply, Aetna concedes that this aspect of Scott has been abrogated.  ECF No. 16 at 8 n.7.

6

sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Such deference, however, is not accorded to labels and legal conclusions, formulaic recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement. Iqbal, 556 U.S. at 678.

## III. DISCUSSION

There is no dispute that Plaintiff's claims are preempted by ERISA. The parties also agree that the effect of that preemption is that Plaintiff's claims were automatically converted to claims under ERISA upon removal. See Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 195 (4th Cir. 2002) (holding that "when a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502"). There is also general agreement that Plaintiff's state law breach of contract claim in Count I is converted to a claim for denial of benefits under § 502(a)(1)(B). As noted above, the dispute regarding the conversion to ERISA claims is whether Plaintiff's state law claim for breach of the implied covenant of good faith and fair dealing against Aetna can be converted to an ERISA claim for breach of a fiduciary duty under

§ 502(a)(3) and, if so converted, can it be maintained alongside Plaintiff's § 502(a)(1)(B) claim.

Many courts, including this one, once held that claims under § 502(a)(3) were limited to equitable relief and could not be a source of recovery of monetary damages. See supra, n.2 (noting abrogation of this holding in Scott). The Supreme Court in CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1880 (2011), however, opened the door to the possibility that "appropriate equitable relief" available under § 502(a)(3) could encompass monetary relief. See also McCravy v. Metro. Life Ins. Co., 690 F.3d 176 (4th Cir. 2012) (finding that the traditional equitable remedies of surcharge and equitable estoppel, which could include monetary relief, were available under § 502(a)(3)). Plaintiff contends that this "sea change" in ERISA jurisprudence permits her to bring a § 502(a)(3) claim in addition to her claim under § 502(a)(1)(B). The Court disagrees.

Long before Amara, the Supreme Court held in Varity Corp. v. Howe, 516 U.S. 489, 515 (1996), that a plaintiff cannot pursue relief under § 502(a)(3) when § 502(a)(1)(B) provides an adequate remedy for that same harm. See also, Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 102–03 (4th Cir. 2006) (holding that if "adequate relief is available for the plaintiff's injury through review of her individual benefits claim under § [502](a)(1)(B), relief under § [502](a)(3) will

not lie," citing Varity, 516 U.S. at 515). The Court in Varity reasoned that § 502(a)(3) functions as a "catchall" provision or "safety net," intended to provide an "appropriate equitable relief" only in situations where no other remedy is available. 516 U.S. at 512. "[W]here Congress elsewhere provided adequate relief for a[n] ... injury, [however,] there will likely be no need for further equitable relief, in which case such relief would not be 'appropriate.'" Id. at 515.

With one possible exception,[3] courts have consistently held that Amara and it's progeny did not alter the rule announced in

---

[3] Plaintiff points to a single decision, Strickland v. AT&T Umbrella Benefit Plan No. 1, Civ. No. 10-268, 2012 WL 4511367 (W.D.N.C. Oct. 1, 2012), which appears to reject the continued vitality of Varity post-Amara. In Strickland, the defendant argued, citing Varity, that ERISA does not provide a cause of action for breach of fiduciary duty under Section 1132(a)(3) where the plaintiff has a remedy under another provision of ERISA. The court summarily responded that it agreed with the plaintiff's response that the "[d]efendant's reliance on pre-Amara cases is misplaced. In light of the Supreme Court's decision in Amara, [], and the Fourth Circuit's interpretation of Amara in McCravy, [], equitable relief is now available." Id. at *6. While that latter proposition is undeniably correct, the court did not explain what impact that proposition had on the rule announced in Varity.

This Court also notes that the plaintiff in Strickland was not asserting a claim for benefits under § 502(a)(3). The plaintiff had conceded that he had no claim for benefits. Id. at *6 n.5. Instead, the plaintiff alleged that, in reliance on the defendant's representations that he was covered under defendant's medical insurance policy, he underwent non-emergency surgeries. The defendant at first paid the medical claims for these surgeries but, after determining that the plaintiff should have applied for Medicare Part B, demanded recovery of those payments from the medical providers. The medical providers then

9

Varity. See, e.g., Biglands v. Raytheon Empl. Sav. & Inv. Plan, 801 F. Supp. 2d 781, 785-86 (N.D. Ind. 2011); Harp v. Liberty Mut. Group, Inc., Civ. No. 12-640, 2013 WL 5462290, at *4-5 (M.D.N.C. Sept. 30, 2013); Nemitz v. Metro. Life Ins. Co., Civ. No. 12-8039, 2013 WL 3944292, at *4 (N.D. Ill. July 31, 2013); Roque v. Roofers' Unions Welfare Trust Fund, Civ. No. 12-3788, 2013 WL 2242455, at *7 (N.D. Ill. May 21, 2013); Krase v. Life Ins. Co. of N. Am., Civ. No. 11-7659, 2012 WL 4483506, at *3 (N.D. Ill. Sept. 27, 2012). While Amara and McCravy may have expanded the kinds of equitable remedies available under § 502(a)(3), those remedies are still only available when adequate relief for a beneficiary's injury is not available elsewhere.

It is important to note that the rule in Varity does not prohibit a plaintiff from asserting a claim under § 502(a)(1)(B) and § 502(a)(3) in the same action if those claims are not sought to address the same harm. If a breach of fiduciary claim is for "some injury that is separate and distinct from the denial of benefits," it "may proceed with a claim for benefits."

---

turned to the plaintiff for payments which he was unable to make. As a result, the plaintiff asserted that his credit was destroyed and he was subjected to collection activity. Id. at *9. He asserted that, had he been given the correct information, he would have obtained Medicare Part B coverage before undergoing those surgeries. Id. at *10. While the scope of the "make-whole relief" the plaintiff was seeking under § 502(a)(3) was not specified, it would not appear to be the same as a claim for benefits. See infra (noting that Varity only bars § 502(a)(3) claims to recover for the same harm as a § 502(a)(1)(B) claim for denial of benefits).

10

Biglands, 801 F. Supp. 2d at 786 (citing cases where the § 502(a)(3) claim was "separate, distinct and severable from the alleged harm arising from the benefit denial"); see also Krase, 2012 WL 4483506, at *3 (observing that "Varity leaves the door open for plaintiffs to pursue truly distinct claims under subsections (a)(1)(B) and (a)(3)").  The question then becomes whether the breach of fiduciary claim asserted against Aetna in Count II is brought to remedy the same harm or injury for which relief is sought in Plaintiff's claim for denial of benefits in Count I.

The Court notes that the prayers for relief in Count I and Count II are different.  In Count I, Plaintiff seeks to recover the $20,000 benefit due under the policy.  In Count II, Plaintiff alleges she has suffered "substantial economic loss and damages," and seeks in excess of $75,000.  The only conduct of Aetna referenced in Count II, however, is the allegation that "Aetna has denied Plaintiffs' (sic) claim without justification or excuse."  Compl. ¶ 40.  In opposing the motion to dismiss, Plaintiff reinforces the conclusion that she is seeking in her § 502(a)(3) claim nothing more than the benefits under the policy.  As described by Plaintiff, the equitable remedies she is seeking would serve only to restore coverage under the policy.  See ECF No. 15 at 16-17.

Because Count II incorporates by reference the preceding allegations in the Complaint, the Court could look to Aetna's sending of the September 10, 2009, letter verifying coverage under the policy as the source of a separate and distinct injury. Plaintiff alleges that, in reliance on that letter, Mr. Leach cancelled another life insurance policy that had been purchased on his behalf. This might constitute an injury distinct from the denial of benefits. The difficulty with that basis for a claim of damages against Aetna, however, is that Plaintiff's own allegations place the blame for that error on Owens Corning, not Aetna. Plaintiff alleges that it was Owens Corning that breached its duty to inform Aetna of Mr. Leach's change in employment status, and the clear inference from the allegations in the Complaint is that it was that breach that caused Aetna to send incorrect information to Mr. Leach. Thus, the Court finds that Plaintiff has not stated a claim under § 502(a)(3) that is distinct from her claim under § 502(a)(1)(B) and that Count II must be dismissed.

Aetna also argues that Plaintiff's converted ERISA claims under either section must be dismissed on the ground that Plaintiff failed to exhaust her administrative remedies before filing suit. ERISA does not contain an explicit requirement that the participant exhaust plan remedies before pursuing legal recourse. Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999).

Nonetheless, the statute mandates that benefit plans include an internal administrative appeal process, 29 U.S.C. § 1133(2), and courts have consistently required administrative exhaustion as a prerequisite for an ERISA claim. White v. Sun Life Assur. Co. of Canada, 488 F.3d 240, 247 (4th Cir. 2007) ("[A]lthough ERISA does not explicitly state that claimants must exhaust internal appeals before filing suit, courts have universally found an exhaustion requirement in part because statutory text and structure establish these twin remedies of administrative and judicial review as parts of a single scheme."); see, e.g., Makar v. Health Care Corp. of the Mid-Atl. (CareFirst), 872 F.2d 80, 82 (4th Cir. 1989).

Here, Aetna asserts in its motion that "the plan documents specifically provide that an adverse benefit determination of a life claim may be appealed by requesting review of the denied claim within 60 days following receipt of an adverse decision." ECF No. 7-1 at 11. In support of that assertion, Aetna cites to "Exhibit 'A' hereto at Aetna 16." Id. While Exhibit A to Aetna's motion appears to be the plan document, the Court's review of that document finds no reference, on page 16 or elsewhere in that document, to the time in which appeals must be requested. As noted above, however, the denial letter sent to Plaintiff on February 21, 2013, does state that, if Plaintiff had any additional information that she believed would be

helpful to Aetna in evaluating her claim, she should forward that to Aetna within 60 days of the receipt of that letter. ECF No. 7-3 at 3. Later in the letter, Aetna states that her "request for review must be mailed or delivered within 60 days following receipt of this explanation." Id.

Aetna proceeds in its motion to argue that "[w]here plan documents and the notice of denial of claim sent to the plaintiff inform the plaintiff's administrative obligations if she desires to appeal the denial decision, there is 'no question' the notice is sufficient and that the plaintiff's failure to pursue those administrative obligations will result in the dismissal of her claims for failure to exhaust." ECF No. 7-1 at 11 (quoting Cosby v. Lowe's Cos. Inc., Civ. No. 9-22, 2009 WL 4611879, at *6 (W.D.N.C. Dec. 1, 2009)) (emphasis added by Court). Because the Court will deny Aetna's motion on other grounds, the Court will assume, for purposes of this opinion, that the relevant plan documents do contain a 60-day appeal provision. The Court notes that Plaintiff does not challenge that this was the requirement.

Instead, Plaintiff responds to Aetna's exhaustion argument in two ways. First, Plaintiff suggests that the failure to exhaust administrative remedies is an affirmative defense and cannot be raised on a motion to dismiss. Second, Plaintiff

contends that she did seek timely review of the denial of benefits.

Plaintiff's first argument is without merit.  While the failure to exhaust administrative remedies is an affirmative defense, courts can and often do address that defense in ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Berry v. Gen. Elec. Co., Civ. No. 12-500, 2013 WL 3324259 (W.D. Va. July 1, 2013) (dismissing ERISA claims on Rule 12(b)(6) motion for failure to exhaust administrative remedies); Thomas v. Wells Fargo Ins. Servs. of West Virginia, Inc., Civ. No. 7-671, 2010 WL 3702666 (S.D. W. Va. Sept. 14, 2010) (same).  The cases cited by Plaintiff, see ECF No. 15 at 19, do not support her position.  In some of those cases, the court denied the defendant's motion to dismiss on the ground that the plaintiff had sufficiently pled the applicability of an exception to the exhaustion requirement. See, e.g., Taylor v. Oak Forest Health and Rehab., LLC, Civ. No. 11-471, 2013 WL 4505386, at *3 (M.D.N.C. Aug. 22, 2013) (denying Rule 12(b)(6) motion after concluding that the plaintiff "presented a plausible argument supported by factual allegations" that the futility exception to exhaustion might apply); Trotter v. Kennedy Krieger Inst., Inc., Civ. No. 11-3422, 2012 WL 3638778, at *5 (D. Md. Aug. 22, 2012) (denying Rule 12(b)(6) after concluding that facts alleged in the

complaint supported a plausible inference that futility and "denial of meaningful access" exceptions might apply). In one of the other cases cited by Plaintiff, Goodman v. PraxAir, Inc., the Fourth Circuit specifically noted that "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." 494 F.3d 458, 464 (4th Cir. 2007). The court acknowledged that those situations are "relatively rare" and, in the case before it, concluded that an affirmative defense based on a statute of limitations did not "clearly appear on the face of the complaint" and denied the motion to dismiss. Id.

Plaintiff's second argument has potential merit. While Plaintiff has not alleged that she submitted a timely written request for review, she does allege that she "advised Aetna that its denial was directly contradicted by the 2009 coverage verification letter" and she "contacted the Owens Corning benefits manager directly in an attempt to resolve the issue . . . ." Compl. ¶ 24. Although Plaintiff does not indicate precisely when or how these contacts were made, it could be inferred that it was soon after receiving the denial letter. In her opposition to the motion, Plaintiff states that "Aetna lulled [her] into believing" that she was engaged with the companies in resolving the dispute. ECF No. 15 at 21.

16

Plaintiff also complains that she never had access to the relevant plan documents.

While Aetna suggests that Plaintiff's "lulled into believing" argument is newly raised and not supported by the Complaint, Plaintiff did allege in the Complaint that she "spent an inordinate amount of time and effort dealing with both Aetna and Owens Corning's intentional misrepresentations and bad faith determination in denying benefits under the Policy." Compl. ¶ 25. Thus, this is not a new argument. As to her access to plan documents, the February 21, 2013, letter stated that Aetna would provide her with a copy of the Policy certificate upon written request. Given that the Policy certificate that Aetna has submitted to the Court contains no information regarding initiating an appeal, it leaves some question as to how helpful a request to Aetna for plan documents would have been.

At this stage in the litigation, the Court cannot conclude that it clearly appears on the face of the Complaint that Plaintiff's ERISA claim should be barred for failure to exhaust her administrative remedies. That is not to say that on a fuller record the Court would not reach a different conclusion. The motion to dismiss will be denied as to Count I.

The Court will grant the motion as it relates to Plaintiff's prayer for punitive damages and a jury trial. Plaintiff concedes that she is not entitled to punitive damages

under ERISA.  ECF No. 15 at 13 n.8.  While Plaintiff makes no response to Aetna's assertion regarding the non-availability of a jury trial under ERISA, it is well established in the Fourth Circuit that ERISA claims are for the court and are not for determination by a jury.  <u>Phelps v. C.T. Enterprises, Inc.</u>, 394 F.3d 213, 222 (4th Cir. 2005).

## IV. CONCLUSION

   For the above stated reasons, the Court concludes that Aetna's Motion to Dismiss should be granted in part and denied in part.  Count II will be dismissed and the prayer for punitive damages and a jury trial will be stricken.  A separate order will issue.

                              _____/s/_____
                              William M. Nickerson
                              Senior United States District Judge

DATED: February 5, 2014